F. E. WHITMORE, Appellant, v. J. H. GRIFFEY, Appellee.

SPECIFIC PERFORMANCE: Discretion of Court—Complications Aris-
1   ing Because of Lapse of Time. The discretion of the court to re-
fuse specific performance of a contract for the sale of real estate,
even though plaintiff is guilty of no breach, may find fair justifica-
tion in the complications which have arisen between the parties
because of the long time elapsing between the contract time of per-
formance and the trial of the action for specific performance.

VENDOR AND PURCHASER: Mutual Default—Effect. Principle re-
2   affirmed that the legal effect of the default of both parties to a con-
tract.of sale is that neither is in default.

VENDOR AND PURCHASER: Remedies of Purchaser—Nonright to
3   Status Quo. A purchaser who has never been able to perform may
not demand the restoration of the status quo when the vendor has
never been in default, and there has been no mutual rescission.

Headnote 1: 36 Cyc. p. 617. Headnote 2: 36 Cyc. p. 693. Headnote
3: 39 Cyc. p. 2025.

*Appeal from Page District Court.*—EARL PETERS, Judge.

APRIL 7, 1925.

SUIT in equity by the vendor, for specific performance of a
contract for purchase of land. The defendant pleaded, in sub-
stance, a general denial of performance or tender by the plaintiff,
and that the contract had been mutually rescinded. The de-
fendant presented a counterclaim, also, for the recovery of par-
tial payments made. There was a decree dismissing both the
petition and the counterclaim. The plaintiff first appealed.
Thereafter, the defendant appealed:—*Affirmed on both appeals.*

*Wilson, Keenan & Millhone,* for appellant.

*Ferguson, Barnes & Ferguson,* for appellee.

EVANS, J.—The defendant offered no testimony. We have
to do, therefore, with the version of facts as presented in the
testimony on behalf of the plaintiff. In May, 1920, the defend-

1. SPECIFIC PER-·
FORMANCE: dis-
cretion of court:
complications
arising because
of lapse of time.

ant entered into a contract of purchase with the plaintiff, for the plaintiff's farm of 160 acres, at an agreed price of $43,000. As a part of the purchase money, the defendant paid $1,000 in cash, and executed and delivered his note for $4,000. The written contract provided that it should be fully performed on March 1, 1921, at which time the defendant was to pay to plaintiff the further sum of $28,000, and to take conveyance of the property, subject to incumbrance of $10,000. Time was of the essence of the contract. As explanatory of the subsequent conduct of the parties, it appears that, shortly before this contract of purchase was entered by Griffey, he had himself sold his own farm to one Lubbin, for approximately the same price as he now proposed to pay the plaintiff. This contract also was to be performed by Lubbin on March 1, 1921. Shortly prior to March 1, 1921, it became known to Griffey that Lubbin would probably be unable to perform his contract of purchase on March 1st. Such failure on the part of Lubbin would render Griffey wholly unable to perform his contract of purchase with the plaintiff on the date fixed. Griffey advised the plaintiff of his apprehension and of his dilemma. They had several conferences on the subject, immediately prior to March 1st. They discussed, to some extent, methods by which Griffey could perform, notwithstanding the failure of Lubbin. To that end, plaintiff offered to accept mortgages, in lieu of the cash agreed to be paid. The plaintiff's attitude towards the defendant in these conferences was one of leniency. As a result of these conferences, it was known to both of them, immediately prior to March 1st, that Griffey could not perform on that day, and the plaintiff made no insistence upon time as the essence of his contract. We think that the fair purport of these various conversations was a mutual understanding that the time of performance should be deferred beyond the date fixed. The parties did not, therefore, meet on March 1st, nor, so far as appears, did either of them present himself at the place where the contract was to be performed. The parties did meet on March 2d, and renewed their conference. One subject of the conference was the failure of Griffey to col-' lect from Lubbin. Griffey also sought release from plaintiff's contract, and offered $2,000 for such release. This was de-

clined by the plaintiff. Griffey also said that, unless he could recover from Lubbin, he would not be able to perform the contract. He expressed a purpose to begin suit against Lubbin, unless he could settle with the plaintiff. Shortly thereafter, he did begin suit against Lubbin. The attitude of plaintiff continued to be one of leniency. It was understood between him and Griffey that he should utilize the land, by renting it. This he did by renting to his own son, who continued in the occupancy of the farm up to the time of the trial in the court below. Griffey prosecuted his action against Lubbin, and was finally defeated. His attitude towards plaintiff, at all times, in their mutual conferences, was that he *could* not perform unless he could recover from Lubbin. This appears to have been his final attitude when he failed to recover from Lubbin. The plaintiff brought his action in February, 1922. It was tried in the lower court in the latter part of May, 1923. The theory of defense put forward by the defendant is threefold:

(1) That time was of the essence of the contract, and that the plaintiff did not tender performance on the date fixed in the contract, and that no legal excuse was shown for such failure.

(2) That the plaintiff still retained possession of the land, and had rented the same to a tenant, and was unable to place the defendant in possession of the land, in event of decree in his favor.

(3) That the circumstances of the case are such as to justify the court, in the exercise of sound discretion, in refusing specific performance.

The foregoing are the three propositions set forth in appellee's argument as grounds of affirmance upon plaintiff's appeal. As grounds for recovery upon his own counterclaim, he puts forward the further proposition that the contract was, in legal effect, rescinded by the mutual abandonment and understanding of the parties, and that, therefore, the defendant is entitled to be restored to the *status quo,* and to recover the money paid and the promissory note delivered by him.

The ground of decision of the trial court does not appear in the record. Inasmuch, however, as he dismissed both the petition of the plaintiff and the counterclaim of the defendant, he must have found, upon the evidence, that there was neither a

mutual rescission of the contract nor a breach of the same by the plaintiff. The decree, being on its face adverse to both parties, can be rendered consistent in its two parts only upon the theory that, in the exercise of a permissible discretion, the court refused specific performance to the plaintiff, leaving to him his remedy at law, and dismissed the counterclaim for failure of proof of the grounds upon which it was predicated. A careful study of the record satisfies us that the decree should be approved in both respects, on the theory here stated.

I.    Turning first to the appeal of plaintiff, was it within the sound discretion of the court to refuse specific performance to the plaintiff, even though he had been guilty of no breach 2. Vendor and on his part? Assuming as correct the plaintiff's PURCHASER: contention of fact, the failure of these parties mutual default: effect. to appear at the place of performance on March 1st amounted to a mere waiver of time as of the essence of the contract, on the part of both of them. If both were thereby in default, then neither was. The contract was still enforcible by either party, upon demand and tender. The fact remains that, through the inability of the defendant, and through the leniency of the plaintiff, a long time elapsed after March 1, 1921, and before the date of the trial on the last of May, 1923. The longer the lapse of time after the proper date of performance, the more difficult does a decree of specific performance become. The contract was drawing interest; the plaintiff was receiving the rent share of the crops. Taxes accrued, and had to be paid. A decree of specific performance would require a burdensome accounting for rent share of crops for 1921 and 1922, and would further require a difficult accounting for the first three months of the season of 1923. At the time of the trial, the land was all under growing crops, of which none was mature. The complications thus created by the mere lapse of time, made a strong call upon the court's discretion as to the remedy of specific performance

Under all the circumstances appearing in the record, we think this discretion was fairly exercised. This would leave to the plaintiff his remedy at law. Doubtless this ought to have been indicated in terms in the decree.

II.    Turning now to the appeal of the defendant from that part of the decree which dismissed his counterclaim, we

think the grounds of complaint are not tenable. The argument is, in substance, that the conduct of the parties amounted to an abandonment of the contract, and thereby to a mutual rescission thereof. Without doubt, the plaintiff was at all times ready, able, and anxious to carry out the contract. In the light of events already existing on March 1, 1921, the contract was clearly advantageous to him. Never, in terms or intent, did he assent to a rescission of the contract. It is argued that he assented to a modification of it, in this: that Griffey was to perform it provided he could enforce his contract against Lubbin. The only ground in the record for this contention is that Griffey insisted from the beginning that he *could not* perform, unless he could enforce his contract against Lubbin. In the light of subsequent events, Griffey disclosed that what he meant by saying that he *could not,* was that he *would not,* except upon the condition named. It is argued that the conduct of the plaintiff, in the presence of such an assertion, amounted to acquiescence and consent. If, prior to March 1, 1921, Griffey unequivocally notified the plaintiff that he could not perform on the date named, this amounted to a breach of the contract on his part. The plaintiff could have treated it as such, and could have maintained an action for damages for such breach, without even waiting for the date of performance. The plaintiff did not lose such right of action by delaying the commencement of it. Nor, on the other hand, was plaintiff bound to adopt such remedy. He had an equal right to resort to the remedy of specific performance. In order to avail himself of such remedy of specific performance, it was incumbent upon him to tender performance upon the date fixed, unless such date of performance had been previously mutually waived. In such case, he was bound also to keep his tender good at all times. This latter condition was not essential to his right to maintain an action for damages. If he had adopted that remedy, he would have been excused from making tender to any extent. That is, he could have abandoned the contract, and sued for his damages forthwith. *Thompson v. Yousling,* 196 Iowa 363. Inasmuch as specific performance has been refused to the plaintiff, we are not concerned over the sufficiency of his tender as a condition to the specific performance. For the

3. VENDOR AND PURCHASER: remedies of purchaser: non-right to status quo.

purpose of damages, we are only concerned with the question as to who first breached the contract. Taking the defendant's own attitude and representation, there was never a day from the date of performance due, that the defendant could perform it. Such was his persistent declaration. Upon a breach of the contract by the defendant, no further obligation of performance rested upon the plaintiff, as a basis for damages. This being so, the defendant is in no position to claim a restoration of *status quo* on the ground of mutual rescission. The court, therefore, properly dismissed his counterclaim.

Our foregoing reference to an action for damages, as a remedy at law, is not intended to exclude any other possible remedy at law. Whether the plaintiff might resort to the remedy of forfeiture, we do not consider. We hold only that the dismissal of the plaintiff's petition should be without prejudice to an appropriate remedy at law.

On the defendant's appeal, the decree is, accordingly, affirmed. On the plaintiff's appeal, it is also affirmed, as modified herein, and without prejudice to appropriate remedy at law.— *Affirmed on both appeals.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.